(No. 31534.—

HOWARD E. KREMERS, Appellant, *vs.* THE CITY OF WEST CHICAGO *et al.,* Appellees.

*Opinion filed September 21, 1950.*

MAURICE SCOTT, and GIFFIN, WINNING, LINDNER & NEWKIRK, both of Springfield, (MONTGOMERY S. WINNING, of counsel,) for appellant.

LEE E. DANIELS, State's Attorney, of Wheaton, for appellees.

Mr. JUSTICE WILSON delivered the opinion of the court:

The plaintiff, Howard E. Kremers, filed his amended complaint in the circuit court of Du Page County against the defendants, the city of West Chicago, the county clerk, and the county treasurer and *ex officio* county collector, seeking an injunction against the extension and collection of the portion of a general property tax levied by the city of West Chicago, pursuant to section 13 of the Library Act, (Ill. Rev. Stat. 1949, chap. 81, par. 13,) which exceeds the limitation incorporated into section 13 by House Bill No. 903, effective July 13, 1949. (Laws of 1949, p. 1076.) Plaintiff alleged that unless the relief sought were granted, a multiplicity of actions would result for a determination of the validity of the tax. The city of West Chicago filed its amended answer and its codefendants made

a motion to strike plaintiff's pleading upon the ground that House Bill No. 903 contravenes section 22 of article IV of our constitution. Plaintiff moved to strike the amended answer of the city of West Chicago. The cause was heard upon the pleadings, the motion to strike the amended complaint was allowed, plaintiff's motion denied, and a decree entered adjudging House Bill No. 903 unconstitutional and dismissing plaintiff's amended complaint for the want of equity. Plaintiff appeals.

The challenged statute is an amendment to section 13 of "An Act to authorize cities, villages, incorporated towns and townships to establish and maintain free public libraries and readings rooms," as amended. When the General Assembly, in 1945, enacted legislation purporting to set up a mandatory 100 per cent assessment system in the State, beginning January 1, 1946, companion acts were passed reducing existing tax-rate limitations by fifty per cent, effective for the year 1946 and subsequent years. Prior to its amendment, effective January 1, 1946, section 13, so far as relevant, contained the following limitation upon the tax which could be levied: "Provided, the said levy shall not exceed one and two-thirds ($1\frac{2}{3}$) mills on the dollar in any one year." (Ill. Rev. Stat. 1943, chap. 81, par. 13.) By the amendatory act, effective January 1, 1946, the limitation was revised to read, "Provided, the said levy shall not exceed .0833 per cent of full, fair cash value, as equalized or assessed by the Department of Revenue, in any one year," and "Provided, further, that the foregoing limitations upon tax rates are subject to the provisions of Sec. 162a of the 'Revenue Act of 1939,' filed May 17, 1939, as amended." (Ill. Rev. Stat. 1945, chap. 81, par. 13.) Section 162a provides tax limits for a period of five years on the same basis as they had been established before by the varying ratios of assessed to full, fair cash value of taxable property in the several counties.

In 1949, section 13 was again amended to read: "Provided, the said levy shall not exceed .0833 per cent of full, fair cash value, as equalized or assessed by the Department of Revenue, in any one year, and shall not be levied oftener than for the number of years into which the library board in those cases where bonds are not issued, as aforesaid, shall have divided the cost of said building, or site, or the remodeling, repairing or improving of an existing library building or the erection of an addition thereto or equipment, or any or all of said things; and when collected as last aforesaid, the tax shall cease. Provided, further, that the foregoing limitations upon tax rates are subject to the further limitations that the tax rate extended shall not exceed 110% of the product of the maximum tax rate extendible for such purpose for the year 1945 and the ratio of assessed value to full value as determined by the Department of Revenue for the year 1945 in the county in which the said levy is made, unless changed by referendum as provided in the General Revenue Law of Illinois." Laws of 1949, p. 1076.

Several years ago, the city of West Chicago, situated in Winfield township, in Du Page County, established a public library and reading room for the use and benefit of its inhabitants, conformably to the provisions of the Library Act, and has since maintained the library facilities. On August 15, 1949, the city council levied a tax of $3500 for the year 1949 under the provisions of section 13 of the Library Act, and filed the levy with the county clerk. The question of establishing a tax-rate limit for taxes levied under section 13 of the Library Act has not been submitted to a referendum as provided by the General Revenue Law. No bonds have been issued or authorized by the city of West Chicago under section 13, and the tax levy for the year 1949 was made directly for building purposes.

The assessed valuation of all property within the city of West Chicago for the year 1945 was $1,944,483; for 1946, $8,559,407, and for the year 1949, $10,081,567. The maximum permissible tax extension under section 13 for the year 1945 was $3,240.80, calculated at the tax rate of one and two-thirds mills on the 1945 assessed valuation. If the limitations in section 13 of the Library Act, as amended in 1949, be ignored and the limitations in section 162a of the Revenue Act be applied, the maximum tax rate permissible under section 13 of the Library Act for the year 1949 is .03975 per cent of the assessed valuation of property in the city of West Chicago. The maximum permissible tax extension for the year 1949 would be $4,007.72, with the result, of course, that the full levy of $3500 could be extended.

By applying the limitation incorporated in House Bill No. 903, the maximum tax rate under section 13 for the year 1949 is 110 per cent of the product of the maximum tax rate extendible for such purpose for the year 1945 and the ratio of assessed value to full value as determined by the Department of Revenue for the year 1945 in Du Page County, being 1⅔ mills on the dollar, times 18 per cent, times 110 per cent, or .033 per cent of the assessed valuation of the property. This would make a maximum tax extension by the city of West Chicago for the year 1949, under section 13, of $3,326.91, instead of $3500 which would be permissible except for the limitation in House Bill No. 903. In other words, the maximum amount involved in this litigation is $173.09, the difference between the levy made, under section 13, prior to its amendment in 1949, and the levy if made conformably to section 13, as amended in 1949.

Plaintiff's complaint invoked the general power of a court of equity to enjoin the extension and collection of an illegal tax. To prevent a multiplicity of actions by taxpayers, a single taxpayer may bring an action to enjoin

the extension of an illegal tax. The fact that the prayer of plaintiff's complaint, if granted, goes to only a part of the entire tax is no obstacle to the granting of equitable relief where, as here, the illegal is capable of being separated from the legal. *Anderson* v. *City of Park Ridge,* 396 Ill. 235.

The single issue made by the pleadings and requiring consideration is the constitutional validity of House Bill No. 903 and, in particular, whether it is a local or special law contrary to section 22 of article IV of the constitution which declares: "The general assembly shall not pass local or special laws * * * for— * * * Incorporating cities, towns or villages, or changing or amending the charter of any town, city or village." This quoted prohibition is equivalent to a command that general laws alone shall be enacted for the purposes named. In particular, the prohibition against special or local laws extends to statutory provisions for the levy and collection of taxes by municipalities. (*People ex rel. Miller* v. *Cooper,* 83 Ill. 585.) Classification of municipalities and, in particular, of counties, by population, as a basis for legislation, is valid, provided that it be uniform and general in its application and, further, that there be a reasonable relation between the situation of municipalities classified and the purposes and objects sought to be attained by the law. (*People ex rel. Lindheimer* v. *Schweitzer,* 369 Ill. 355; *Mathews* v. *City of Chicago,* 342 Ill. 120; *Strong* v. *Dignan,* 207 Ill. 385; *People ex rel. Stuckart* v. *Knopf,* 183 Ill. 410.) Stated somewhat differently, "There must be something, in the nature of things, which in some reasonable degree accounts for the division into classes." (*People* v. *Knopf,* 183 Ill. 410.) In short, classification by population is valid where dissimilar conditions obtain in different municipalities because of the difference in population. (*Mathews* v. *City of Chicago,* 342 Ill. 120; *L'Hote* v. *Village of Milford,* 212 Ill. 418.) If, however, the result of an act purport-

ing to be a general law is to establish dissimilarity in the powers and modes of different municipalities in the levy and collection of taxes, then, since the law conferring these powers and prescribing these modes becomes a part of the charters of the municipalities, it will be regarded as within the prohibition of the constitution against special legislation. *People* v. *Cooper,* 83 Ill. 585.

Defendants assail the validity of the amendment to section 13 of the Library Act upon the ground that it fixes different maximum tax-rate limitations for cities, towns, and villages of substantially the same population without any reasonable basis for the classification. Plaintiff, on the other hand, insists that the challenged statute, in providing a maximum tax-rate limit, makes no attempt to make a classification solely on the basis of population. He describes in detail how the act, in providing a maximum tax-rate limit, has classified municipalities upon the basis of the 1945 ratio of assessed value to the full, fair cash value of property of the counties in which the respective cities, towns and villages are located. Plaintiff urges that the fixing of effective tax-rate limits upon the basis of assessment ratios recognizes a basis for classification which was established and made effective by the assessment of property prior to 1946. The insuperable difficulty with the contention and its supporting argument is that the classification is inherently arbitrary and not based upon any reasonably conceivable set of facts which would sustain it. No valid reason suggests itself for restricting the city of West Chicago, in Du Page County, to a lower tax-rate limitation for its library building fund than comparable cities in other counties having no greater responsibilities upon their library building funds.

Application of the formula of House Bill No. 903 is illuminating. The city of West Chicago in 1949 had a population of 3355, with a maximum tax-rate limitation of .033 per cent for its library building fund for the year

1949. Application of the same formula discloses that White Hall, in Greene County, a city with a population of 3025, has a maximum tax-rate limitation of .0806 per cent for its library building fund for 1949. A third city, Watseka, in Iroquois County, with a population of 3744, has a maximum tax-rate limitation under House Bill No. 903 of .0531 per cent for the same fund for the same year. A fourth city, Sparta, in Randolph County, with a population of 3664, has a maximum tax-rate limitation of .0605 per cent for its library fund for the year 1949.

The foregoing demonstrates that cities with approximately the same population in various parts of the State, burdened with the same responsibilities and demands upon their library building funds, would have different tax-rate limitations under House Bill No. 903 for these funds, the rates varying from .033 per cent for West Chicago to .0806 per cent for White Hall. The net result of House Bill No. 903 is to establish dissimilarity in the powers and methods of different cities in the levy and collection of taxes. A statute authorizing and prescribing tax rates so variant in amount constitutes a flagrant violation of, and comes within the inhibition of, section 22 of article IV of our constitution.

A similar situation obtained in *People* v. *Knopf*, 183 Ill. 410, and *Knopf* v. *People ex rel. City of Chicago*, 185 Ill. 20. In these cases, the constitutionality of section 49 of the Revenue Act of 1898 was presented for decision. Section 49 ordained that, in counties having a population of 125,000 or more inhabitants, the indebtedness of the counties, and of any city, township, school district or other municipal corporation therein, could not exceed two and one-half per cent of the assessed value of their taxable property and that no such municipality or taxing district could levy a tax in excess of five per cent of the assessed valuation. Like restrictions were not placed upon municipalities in counties having a population of less than 125,000

inhabitants. Holding section 49 to be a local and special law upon a subject on which special legislation is prohibited by the constitution, this court, in *People* v. *Knopf,* 183 Ill. 410, made pointed observations which are singularly applicable in the present case: "By this act restrictions are put upon cities, townships, school districts and other municipal corporations simply because they are within Cook county, which is the only county in the State with a population of more than 125,000. There can be no reason, in the nature of things, why a city, village, school district or other public or *quasi* public corporation in that county should be deprived of powers that a similar corporation situated in some other county is permitted to exercise. It is an arbitrary and unnatural classification of municipalities not different in population, needs or requirements and exercising the same general powers in other respects. For instance, the municipality of Evanston, with the same duties and responsibilities, exercising the same functions and with the same needs as cities of similar population throughout the State, is denied the powers which are allowed to others. The cities of Quincy, Springfield, Joliet, Aurora, Rockford, and others of that class, of about the same population as Evanston, are free from the restrictions of this act as to indebtedness and the levy of taxes. So, also, there are villages in Cook county of lesser population corresponding in size with other municipal corporations all over the State and which have no greater responsibilities. The fact that some such villages are in Cook county affords no ground for a restriction upon them, while others of the same class outside of the county may incur an indebtedness of five per cent of the equalized assessment and may levy taxes to the full limit prescribed by general laws."

Other contentions are made which we have considered but deem it unnecessary to discuss. The decree of the circuit court of Du Page County is affirmed.

*Decree affirmed.*